

SIGNED this 22nd day of July, 2011

_____
Marcia Phillips Parsons
**UNITED STATES BANKRUPTCY JUDGE**

_____

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE

In re

      CAREY McKAIN,                    No. 10-52370
                                        Chapter 7
               Debtor.

### M E M O R A N D U M

A<small>PPEARANCES</small>:

    Fred M. Leonard, Esq.                    Douglas L. Payne, Esq.
    27 Sixth Street                            401 West Irish Street
    Bristol, Tennessee 37620             Greeneville, Tennessee 37743
    *Attorney for Debtor*                    *Attorney for Chapter 7 Trustee*

      **Marcia Phillips Parsons, United States Bankruptcy Judge.** The chapter 7 trustee Douglas Payne objects to certain exemptions claimed by the debtor Carey McKain on the ground that the properties are not held by the Debtor and his wife as tenancies by the entirety and therefore are not exempt under 11 U.S.C. § 522(b)(3)(B). For the reasons discussed below, the Trustee's objection will be sustained as to all properties but the Scott and Stringfellow stock account. This is a core proceeding. *See* 28 U.S.C. § 157(b)(2)(B).

I.

The Debtor, a resident of Abingdon, Virginia, and his first wife Christine divorced on December 21, 2004.  He and wife Sabrina married on March 1, 2005.  The Debtor filed for bankruptcy relief under chapter 7 on September 8, 2010.  In his bankruptcy schedules, the Debtor lists the following property as being owned "joint[ly] with wife as tenants by the entirety," and exempt pursuant to 11 U.S.C. § 522(b)(3)(B):

| Property | Value of Exemption |
|---|---|
| 22475 Tartan Drive, Abingdon, VA | $508,624.00 |
| Branch Banking & Trust Farm Account | $4,500.00 |
| Branch Banking & Trust Checking Account | $45,000.00 |
| Highlands Union Bank Shares[1] | $44,334.00 |
| Scott & Stringfellow Stock Account | $412,822.44 |
| Studebaker Avanti | $20,000.00 |
| 2009 Tax Refund | $33,862.00 |

On December 13, 2010, the Trustee timely objected to the Debtor's claim of exemptions. The Trustee argues that the Debtor and his wife hold the claimed properties as joint tenants, rather than as tenants by the entirety, and therefore they are not exempt from his bankruptcy estate. At a hearing on June 2, 2011, the parties stipulated to certain facts set out hereafter and the admissibility of the relevant documents.  Thereafter, the court took the matter under advisement.

---

[1] In his schedules, the Debtor claimed that 4,926 shares of stock were exempt.  The parties have since stipulated that the Debtor and Sabrina own 4,800 shares of stock.

II.

Under the Bankruptcy Code, a debtor may exempt "any interest in property in which the debtor had, immediately before the commencement of the case, an interest as a tenant by the entirety or joint tenant to the extent that such interest as a tenant by the entirety or joint tenant is exempt from process under applicable nonbankruptcy law." 11 U.S.C. § 522(b)(3)(B). The applicable nonbankruptcy law in this case is Virginia's. Under Virginia law, property held as tenants by the entirety, while subject to the joint debts of the spouses, is "immune from the claims of creditors of one of the spouses alone." *Bass v. Thacker (In re Thacker)*, 5 B.R. 592, 595 (Bankr. W.D. Va. 1980) (citing *Vasilion v. Vasilion*, 66 S.E.2d 599, 603 (Va. 1951)). On the other hand, a joint tenant's interest in property, even if held with the right of survivorship, is generally subject to the claims of his individual creditors. *In re Sampath*, 314 B.R. 73, 97 (Bankr. E.D. Va. 2004) (citing *Jones v. Conwell*, 314 S.E.2d 61 (Va. 1984)). The jointly held property can be partitioned, and the joint tenant's interest sold to satisfy claims against him. *Id.*; *see also* Va. Code Ann. § 8.01-81. Consequently, a debtor's interest as a joint tenant is not exempt from his bankruptcy estate. *In re Potter*, 274 B.R. 224, 229 (Bankr. E.D. Va. 2002).

In the present case, although there has been no stipulation to this effect, it appears from the Debtor's schedules that all of the listed debts arise out of his business and are owed by him individually such that no creditors are owed jointly by the Debtor and his wife. Accordingly, if the Debtor and his wife hold the subject properties as he claims, as tenants by the entirety, they will be exempt from his estate. But, if the Trustee is correct that the Debtor and his wife own the properties merely as joint tenants, then the claim of exemption must be overruled and the Debtor's interest in the properties may be sold for the benefit of his creditors. *Wolfe v. Sprouse*, 183 B.R. 739, 741 n.2 (W.D. Va. 1995), *aff'd*, 91 F.3d 133 (4th Cir. 1996); *Jones v. Conwell*, 314 S.E.2d 61, 66 (Va. 1984). Each of the properties in question will be examined in turn to ascertain how they are held.

III.

A. 22475 Tartan Drive, Abingdon, Virginia

The Debtor purchased the real property in December 2002 and was its sole owner until he

3

conveyed the property to himself and Sabrina "as joint tenants with the right of survivorship" in two quitclaim deeds dated September 28 and October 5, 2004. Both deeds conveyed the same property, but the latter excluded a tract which had been conveyed earlier to another party by the previous owners.

Notwithstanding the "joint tenant" language in the deeds, the Debtor argues that he and his wife hold the property as tenants by the entirety. He notes that under common law, a conveyance of real property to a husband and wife, assuming the presence of the required unities of interest, title, time, and possession, created a tenancy by the entirety, and that it is the fact of marriage, not the recitation of marriage, that creates the tenancy. *See In re Sampath*, 314 B.R. at 84. The Debtor concedes that he and his wife Sabrina were not married when he executed the quitclaim deeds. He asserts, however, that he conveyed the property in anticipation of their marriage and that once wed, all requisite unities of a tenancy by the entirety were satisfied.

In response, the Trustee asserts that Virginia has statutorily abolished the common law presumption that a conveyance to a husband and wife creates a tenancy by the entirety, and that under current law, the document must expressly use the words "tenants by the entirety," or at a minimum, refer to the couple as husband and wife. Alternatively, the Trustee argues that even if the Debtor is correct as to the common law presumption, no tenancy by the entirety was created because the Debtor and his wife were not married at the time the Debtor conveyed his interest to them jointly.

Taking the latter argument first, the court agrees with the Trustee. Tenancies by the entirety are based upon the five unities of interest, title, time, possession, and marriage. *Gant v. Gant*, 379 S.E.2d 331, 332-33 (Va. 1989). A tenancy which lacks the fifth unity of marriage is a joint tenancy rather than an estate by the entirety. *Id.* Moreover, as recognized by the bankruptcy court in *Macconomy*, all five of the unities must be present at the creation of the estate. *See In re Macconomy*, No. 10-16944-RGM, 2011 WL 479739, *2 (Bankr. E.D. Va. Feb. 3, 2011) (applying Virginia law). While *Macconomy* dealt with the unities of title and time rather than of marriage, this court knows of no reason why the marriage unity should be treated differently. The Debtor has offered no authority for his proposition that a conveyance in contemplation of marriage is sufficient,

4

or that such a conveyance becomes an entirety estate upon the couple's subsequent marriage.  To the contrary, as explained in the legal encyclopedia *American Jurisprudence*:

> An estate by the entireties . . . is dependent for its creation and also for its continuance on the marital relation of the cotenants.  No such estate arises from even the most explicit words in a conveyance to a man and woman who are not husband and wife, even though they are described as such in the instrument of title and are believed by the grantor or devisor to be legally married. It is immaterial that they marry after title vests in them, even if the conveyance was made to them in anticipation of their marriage. The parties must be married as of the date of the conveyance.

Am.Jur.2d *Husband and Wife* § 24 (2011); *see also Wolfe v. Sprouse*, 183 B.R. at 742 n.4 (noting, in *dicta*, that relevant inquiry for determining tenancy by entirety is whether couple was married at the time of the execution and delivery of the notes, rather than at the time of the bankruptcy filing).

Because the Debtor and Sabrina were not married at the time he conveyed his interest to them jointly, it is irrelevant whether the common law presumption regarding conveyances to a husband and wife is still in effect in Virginia.  The conveyance by the Debtor created a joint tenancy rather than a tenancy by the entirety.  Because a joint tenant's interest is not exempt under Virginia law, the Debtor's claimed exemption in the real property located at 22475 Tartan Drive, Abingdon, Virginia must be disallowed.

### B. Branch Banking & Trust Accounts

The Debtor has claimed two bank accounts at Branch Banking & Trust as exempt on the basis that they are held by him and his wife as tenants by the entirety.  Both accounts were opened by the Debtor prior to his marriage to Sabrina, with Sabrina added to the accounts after their marriage.  The signature cards for the accounts describe them as "joint with survivorship." Account no. 4064, referred to in the schedules as a farm account with a value of $4,500, was opened on November 2, 2002, and Sabrina was added on April 6, 2005.  Account no. 4129, characterized as a checking account in the schedules with a value of $45,000,[2] was opened on October 21, 2002, and

---

[2] The schedules refer to the accounts as either "farm" or "checking" with no mention of the account numbers.  Inversely, the signature cards refer to the account numbers only and not by name. However, Sabrina testified at her Rule 2004 examination that the couple's joint checking account
(continued...)

Sabrina added on March 19, 2005.

As with respect to his real property, the Debtor's basis for his claim that he and his wife hold the bank accounts as tenants by the entirety is the common law presumption that a conveyance to a husband and wife creates a tenancy by the entirety. The Debtor also cites Va. Code Ann. § 55-20.2(A), which provides that "[a]ny husband and wife may own real or personal property as tenants by the entireties."

The Trustee's response is the same as before, that Virginia has abolished the common law presumption and that the words "tenants by the entirety" must be used or the couple referred to as husband and wife, neither of which exist with respect to the two bank accounts. Alternatively, the Trustee argues that Virginia law does not authorize bank accounts to be held as tenants by the entirety. To support this proposition, the Trustee cites Va. Code Ann. § 6.2-606(A), which creates a presumption that a joint bank account held by a married couple is owned by them "equally," a word defined by the Virginia Supreme Court as one-half. S*ee Lewis v. House*, 348 S.E.2d 217, 219 (Va. 1986). The Trustee also references Va. Code Ann. § 6.2-618, which addresses financial institutions maintaining forms for two types of joint accounts, joint and joint with right of survivorship. The Trustee maintains that, by implication, tenancy by the entirety is no longer an option for bank accounts.

Undeniably, as the Debtor maintains, personal property as a general rule may be held as a tenancy by the entirety under Virginia law. *See* Va. Code Ann. § 55-20.2(A); *see also Oliver v. Givens*, 129 S.E.2d 661, 663 (Va. 1963) (estate by the entirety can exist in personal property). On the other hand, however, the Virginia General Assembly has enacted legislation specifically addressing property interests in multiple-party bank accounts. *See* Va. Code Ann. § 6.2-604, *et seq*. As noted by the Trustee, Va. Code Ann. § 6.2-606(A) provides that "a joint account between persons married to each other shall belong to them equally . . . unless . . . there is clear and convincing evidence of a different intent." "Joint account" includes accounts with any right of survivorship. Va. Code Ann. § 6.2-604 (definition of "joint account"). Moreover, Va. Code Ann. § 6.2-605(A)

---

[2](...continued)
was Number 4129. By process of elimination, Number 4054 must be the farm account.

instructs that § 6.2-606's provisions regarding beneficial ownership "are relevant only to controversies between these parties and their creditors and other successors, and have no bearing on the power of withdrawal of these persons as determined by the terms of account contracts." As explained by the Virginia Supreme Court:

> As Code 6.1-125.2 [now § 6.2-605] expressly provides, joint account depositors' ownership rights are not affected by contract provisions which allow either depositor to withdraw the entire account. *Rather, the General Assembly expressly established the ownership rights of each.* Initially, husbands and wives were presumed to own the funds on deposit in joint accounts in proportion to their respective contributions. Code 6.1-125.3(A) (1979). Following amendment, however, they are presumed to own the account "equally." Code 6.1-125.3(A) (Supp. 1982) [now 6.2-606(A). . . .
>
> . . . .
>
> We believe it was the intent of the General Assembly to place a husband and wife in a position more favorable in relation to creditors than that of other joint depositors by providing a presumption protecting from creditors one-half of their joint funds, regardless of the amount of contributions made by each to the account. Therefore, we construe the statutory language to establish a rebuttable presumption that each spouse owns one-half the joint deposit. It is the burden of the creditor to rebut the presumption by producing clear and convincing evidence that his debtor owns more than one-half the deposit.

*Lewis v. House*, 348 S.E.2d at 30-31 (emphasis supplied).

In *Lewis*, a creditor of the husband spouse had argued that because either the husband or the wife could withdraw all the funds in the account, each owned the entire account so that a creditor of either could subject the entire account to garnishment. *Id*. at 28. The court found no merit to this argument, concluding as discussed above that the word "equally" means "in equal proportions" or one-half. *Lewis v. House*, 348 S.E.2d at 219 (Va. 1986).[3]

---

[3] It must be noted that the couple in *Lewis* had conceded that the garnishing creditor could reach one-half of the funds on deposit. The court observed in a footnote that in light of this concession it was unnecessary to decide the threshold question of whether any funds in a joint account may be garnished by a creditor of only one of the joint depositors. *Lewis v. House*, 348 S.E.2d at 218-19 n.1.

Although no appellate court has answered this threshold question, a Virginia trial court in an unreported decision resolved the issue by first asking whether the intent to create a tenancy by
(continued...)

Upon a consideration of the foregoing, this court rejects the notion that there is currently any common law presumption that joint bank accounts held by a married couple are held as tenants by the entirety, at least with respect to "controversies between [married couples] and their creditors and other successors."  To the contrary, under those circumstances, Virginia law expressly creates a statutory presumption that each spouse owns one-half of the couple's joint bank account, even if the account is held jointly with a right of survivorship.  This statutory presumption is applicable to the case at hand because the Trustee's objection to the Debtor's claimed exemptions is essentially a controversy between the Debtor and his creditors as it determines what property may be used to satisfy his debts.  The existence of this statutory presumption is logically inconsistent with any alleged common law presumption that a husband and wife own property as tenants by the entirety. Any other conclusion would produce the anomalous result that the statutory presumption would never arise because under common law a husband and wife would each own the entirety. Because the construction urged by the Debtors would render Va. Code Ann. § 6.2-606(A) a nullity, it must be rejected. *See, e.g., Idoux v. Estate of Helou*, 691 S.E.2d 773, 776 (Va. 2010) (court is not free to ignore statutory language or render it meaningless); *see also Isbell v. Commercial Inv. Assocs., Inc.*, 644 S.E.2d 72, 75 (Va. 2007) ("a statutory change in the common law is limited to that which is expressly stated in the statute or necessarily implied by its language").

Moreover, this court is not convinced that there was a common law presumption that personal property held by a married couple was held as tenants by the entirety.  Rather, it appears that the presumption generally applied only to real property, except when real property held by an

---

[3](...continued)
the entirety had been expressed by the use of entirety language or by referring to the couple as husband and wife. *See Rue & Assoc., Inc., v. White*, No. LS-1656-1, 2006 WL 2022184, *2 (Va. Cir. Ct. July 18, 2006).  The court concluded that absent this expressed intent, ownership of a joint account held by a married couple is governed by Va. Code Ann. § 6.2-606(A) and its presumption that each spouse owns one-half. *Id. Cf. Sulzman v. Barnick*, Nos. CL01-245-03 and 04, 2003 WL 21659473, *3  (Va. Cir. Ct. July 8, 2003) (without addressing Va. Code Ann. § 6.2-606(A), court concluded that joint bank account with a right of survivorship held by a married couple was a tenancy by the entirety immune from individual creditors, even though the account did not expressly state "tenancy by the entirety" or note the couple's marital relationship).  This court concurs with the *White* court's approach of honoring the rebuttable nature of § 6.2-606(A)'s presumption by first ascertaining whether there is clear and convincing evidence of a different ownership intent.

entirety tenancy was sold, in which case the entirety estate continued in the proceeds.  *See In re Cordova*, 394 B.R. 389, 399 (Bankr. E.D. Va. 2008) ("At common law, after all, a tenancy by the entireties was an estate in lands, and very different rules governed the personal property of married couples."); *Pitts v. United States*, 408 S.E.2d 901, 905 (Va. 1991) (promissory notes received as part of purchase price from sale of entireties realty held as entireties); *Oliver v. Givens*, 129 S.E.2d at 663 (proceeds from sale of entirety real property held in same fashion).  The *Sampath* decision upon which the Debtor relies was a real estate case, not a personal property case, as subsequently recognized by its author.  *See In re Rodriquez*, 406 B.R. 707, 709 (Bankr. E.D. Va. 2008) (Mayer, J.).

Additionally, the existence of  Va. Code Ann. § 55-20.2(A)'s  statement that "any husband and wife *may* own real or personal property as tenants by the entireties," does not support the assertion that personal property held jointly by a husband and wife *is* presumed to be held as tenants by the entirety.  The statute was not enacted until 1999, *see In re Potter*, 274 B.R. at 228, and its use of the permissive "may" is inconsistent with the existence of a presumption that a husband and wife hold property as tenants by the entirety.  If a married couple "may" hold property as tenants by the entirety as the statute permits rather than presumes, it is only logical to conclude that the desire to hold property in this fashion must be evidenced in some way.  *In re Massey*, 225 B.R. 887, 895 (Bankr. E.D. Va. 1998) (a tenancy by the entireties cannot result unless it manifestly appears from the tenor of the instrument that it was intended).  While *Sampath* holds that this intent is implied with respect to conveyances of real property to a married couple with a right of survivorship, there is simply no authority under Virginia law for the proposition that it is implied with respect to personalty held by a husband and wife.    Accordingly, the Trustee's objection to the Debtor's claimed exemption in the two Branch Banking & Trust accounts will be sustained.

C.  Highlands Union Bank Shares

The next challenged exemption is in 4,800 shares of Highlands Bankshares, Inc. valued at $44,334.00.  The stock certificate evidencing ownership is dated December 5, 2005, and recites on its face that the owners are  "Carey McKain and Sabrina D. McKain  JT TEN WROS."  A notation on the face of the certificate states "See Reverse for Certain Definitions."  The back of the certificate

lists certain abbreviations and states that when these abbreviations are used on the face of the certificate they "shall be construed as though they were written out in full according to applicable laws or regulations."  The listed abbreviations are: "TEN COM – as tenants in common"; "TEN ENT – as tenants by the entireties"; and "JT TEN – as joint tenants with right of survivorship and not as tenants in common."  Applying the definitions to the abbreviation listed on the face of the certificate, the Debtor and his wife own the stock as joint tenants with a right of survivorship, not as tenants in common or tenants by the entirety.[6]

Nonetheless, the Debtor asserts that he and his wife own the stock as tenants by the entirety, based again on the alleged common law presumption.  As concluded previously, however, case law does not support the existence of a common law presumption that personal property held by a married couple is held by them as tenants by the entirety.  Also as noted previously, the mere fact that Virginia law *permits* personalty to be held as tenants by the entirety pursuant to Va. Code Ann. § 55-20.2(A), does not create or establish a presumption that personalty *is* held in this fashion.  There must be an expressed intent to hold the personal property in this fashion. *In re Massey*, 225 B.R. at 895.  No such intent was expressed by the Debtor and his wife when they obtained the shares of stock in Highlands Bankshares, Inc.  To the contrary, they plainly had the option of choosing the abbreviation "TEN ENT" but evidently chose not to do so. *Cf. Colley v. Cox*, 167 S.E.2d 317, 319-20 (Va. 1969) (holding that intent to establish survivorship rights was not manifest when parties failed to select "joint account with survivorship" from a list of estate options).  Because the Debtor and his wife hold the stock as joint tenants rather than as tenants by the entirety, the Trustee's objection to the Debtor's claimed exemption in the stock must be sustained.

D. Scott & Stringfellow Stock Account

The Trustee also objects to the Debtor's claimed exemption in an asset management account at Scott & Stringfellow, Inc. with a value of $412,822.44.  The account agreement dated September 18, 2006, lists the Debtor and his wife as the clients and recites that the account is "joint-tenant by entirety."  Notwithstanding the "entirety" nomenclature, the Trustee argues that the account is not

---

[6] Presumably "WROS" was added to emphasize that the Debtor and Sabrina took "with right of survivorship."

a true tenancy by the entirety, because under the terms of the agreement either spouse can dispose of funds or otherwise alienate his interest on his own.[7]  Specifically, each tenant has "full and independent authority" to trade assets, communicate with the broker, deposit and withdraw money, and "generally to act as if each were a sole account owner, all without notice to other owners." Further, the Debtor and his wife testified at their Rule 2004 examinations that they had in fact withdrawn funds from the account without first obtaining the other spouse's consent to the withdrawals.

There is some authority for the Trustee's contention.  In a footnote in the *Potter* decision, the bankruptcy court observed that one of the common law characteristics of a tenancy by the entirety is that neither spouse, acting alone, can dispose of the property and concluded that, consequently, any financial account or stock ownership that is formally designated a tenancy by the entirety must also require the signatures of both spouses for withdrawals.  *In re Potter*, 274 B.R. at 230 n.10.  This conclusion was in effect *dictum*, as the *Potter* court recognized, because the stock agreement governing the stock in question required the signatures of both owners for a sale or other disposition.  *Id.*

While the *Potter* court's observation regarding one of the common law characteristics of an entirety tenancy is correct, its conclusion is debatable.  Although there are no Virginia state cases on the subject, it is well established in cases from other jurisdictions that the non-alienation requirement of a tenancy by the entirety is satisfied when the couple has agreed in advance to act as the other's agent in making withdrawals, thereby maintaining  the joint consent attribute of a entirety tenancy.   *See* Am.Jur.2d *Husband and Wife* § 30 (2011) (citing *Morrison v. Potter*, 764 A.2d 234, 238 (D.C. 2000) ("Thus the unilateral right of one spouse to withdraw funds from a joint account does not defeat a tenancy by the entireties estate.")); *see also* W.W. Allen, Annotation,

---

[7] The Trustee also asserts that the unity of time was not satisfied because Sabrina was added to an existing Scott & Stringfellow account after it was created.  This argument has no merit, as it is well settled under Virginia law that a tenancy by the entirety may be created by one spouse conveying previously owned property to himself and his spouse as tenants by the entirety. *See, e.g.*, *Dolby v. Dolby*, 694 S.E.2d 635, 636 (Va. 2010).  The unity of time was satisfied when both the Debtor and Sabrina signed the agreement on September 18, 2006, thereby each receiving the same interest in the account at the same moment.

11

*Estates by Entirety in Personal Property*, 64 A.L.R.2d 8 § 35 (1959) (noting majority doctrine that ownership by the entirety of a bank account is not precluded by the fact that under the terms of the account either husband or wife may draw the funds). The account agreement in the present case includes this agency language as it expressly designates the spouses as authorized agents for the other unless written notice is provided to the contrary. No evidence was introduced indicating that the Debtor and/or his wife had ever provided contrary written notice.

In light of the foregoing, this court is persuaded that the Debtor and his wife hold the Scott & Stringfellow account as tenants by the entirety, notwithstanding their ability to make unilateral withdrawals from the account.[8] With the recitation of the words "tenant by the entirety," the Debtor and his wife plainly set forth their intention to hold their account in this fashion. Further, the statute that the Trustee cites for the proposition that the intent to hold property as tenants by the entirety must be manifest, Va. Code Ann. § 55-20.2, specifically indicates that it "*shall* be manifest from a designation of a husband and wife as 'tenants by the entireties' or 'tenants by the entirety.'" *Id.* (emphasis supplied). The use of the mandatory "shall" suggests that entirety language is sufficient in and of itself to create a tenancy by the entirety, assuming the other unities are present, without any other qualifiers such as a prohibition on unilateral disposition. In light of the applicable statutes, the majority doctrine from other jurisdictions regarding spousal agency, and the absence of any Virginia case law, other than *dictum*, supporting the Trustee's objection, the court will overrule the Trustee's objection to the Debtor's claimed exemption in the Scott & Stringfellow stock account.

E. Studebaker Avanti

The Debtor and his wife are the owners of a 1963 Studebaker Avanti automobile valued at $20,000. The certificate of title lists the owners as "McKain, Carey Wilson, and McKain, Sabrina

---

[8] Although not addressed by either party, it does not appear that the Scott and Stringfellow investment account is the type of account governed by the statutory scheme set forth in Va. Code Ann. § 6.2-604, *et seq*., for multiple-party bank accounts. For purposes of Article 2 of Title 6.2 provisions, an account is "a contract of deposit of funds between a depositor and a financial institution, and includes a checking account, savings account, certificate of deposit, share account, and other similar arrangements." Va. Code. Ann. § 6.2-604. The Scott & Stringfellow account appears to be a contract of investment, designed to facilitate investment, rather than a contract of deposit. In fact, the account agreement explicitly states that the asset management account "is not a checking account."

Dianne, or Surv."  The Debtor asserts that he and his wife own the automobile as tenants by the entirety, pointing out that they both use it and that it was purchased with joint funds.  However, the bankruptcy courts in Virginia are in agreement that Virginia state law does not permit the creation of a tenancy by the entirety in a  motor vehicle.  *See In re Rodriguez*, 406 B.R. at 710; *In re Cordova*, 394 B.R. at 399.  As it did with bank accounts, the Virginia General Assembly enacted a statute specifically governing ownership interests in motor vehicles.  *See* Va. Code Ann. § 46.2-622.  This statute authorizes certificates of title for motor vehicles to be issued in the names of two individuals, jointly with the right of survivorship.  *Id.*  However, it expressly does not "permit the issuance of a certificate of title in the names of two persons as tenants by the entireties."  Va. Code Ann. § 46.2-622(iii).  The court in *Cordova* concluded that this statute specifically prohibiting motor vehicles from being held as tenants by the entirety limited the application of Va. Code Ann. § 55-20.2(A) which allows personal property in general to be so held.  *In re Cordova*, 406 B.R. at 710 (quoting *Virginia Nat'l Bank v. Harris*, 257 S.E.2d 867, 870 (1979) ("When one statute speaks to a subject in a general way and another deals with a part of the same subject in a more specific manner, the two should be harmonized, if possible, and where they conflict, the latter prevails.")).

From the foregoing, it is clear that the Virginia General Assembly intended to preclude the Department of Motor Vehicles from issuing certificates of title to tenants by the entirety.  Nonetheless, the Debtor argues that the mere fact that titles may not be *issued* in the name of tenants by the entirety does not in and of itself preclude a married couple from *owning* motor vehicles as such tenants.  Both the *Cordova* and *Rodriguez* courts, however, rejected this argument.  They note that Va. Code Ann. § 46.2-622 not only prohibits the issuance of a certificate of title to tenants by the entirety but also provides that nothing in the statute shall "grant immunity from enforcement of any liability of any person owning the vehicle, as one of two joint owners, to the extent of his interest in the vehicle, during the lives of its owners."  *In re Rodriguez*, 406 B.R. at 710; *In re Cordova*, 394 B.R. at 399. As explained by the court in *Rodriquez*:

> This express prohibition . . . is contrary to one of the fundamental characteristics of a tenancy by the entirety–immunity from the claims of creditors of either husband or wife alone [and] . . . standing alone prevents the creation of a tenancy by the entirety. The provision that prohibits the issuance of a tenancy by the entirety certificate of title only re-enforces the prohibition of creating an immunity from enforcement of a judgment against one of the owner's interest in the motor vehicle.

13

> Both the immunity provision and the tenancy by the entirety provision are clear.
> Motor vehicles cannot be owned by husband and wife as tenants by the entirety.
> Unlike the law of real estate tenancies by the entirety discussed in *Sampath*, a statute
> prohibits tenancies by the entirety in specific personal property–motor vehicles.

*In re Rodriguez*, 406 B.R. at 710; *see also In re Cordova*, 394 B.R. at 399 ("the General Assembly

has effectively precluded the creation of a tenancy by the entireties in motor vehicles").

Moreover, the court in *Rodriquez* was not persuaded by the fact that the funds used to

purchase the motor vehicle in question had been derived from property held as tenants by the

entirety. *In re Rodriguez*, 406 B.R. at 710. The court noted that a tenancy by the entirety may be

terminated or severed when a couple uses the property to purchase non-tenants by the entirety

property. *In re Rodriguez*, 406 B.R. at 710 (citing *Banc of America Leasing & Capitol LLC v.

Havel*, 2006 WL 2850645 (E.D. Va. Sept. 29, 2006)). The *Rodriquez* court concluded that the

entirety interest held by the debtor and his wife terminated when the debtor used the funds to

purchase non-tenants by the entirety property, the motor vehicles. *Id.*

This court is persuaded that the Debtor and his wife do not hold the Studebaker Avanti

automobile as tenants by the entirety. The certificate of title does not mention tenancy by the

entirety or otherwise refer to the couple as husband and wife. Further, Virginia law prohibits the

issuance of a certificate of title for a tenancy by the entirety. Regardless of whether Virginia law

still permits motor vehicles to be owned by a husband and wife as tenants by the entirety, Va. Code

Ann. § 46.2-622 undeniably dissipates any support for a common law presumption in favor of an

entirety tenancy, if one ever existed in personalty. Thus, at a minimum, the intent to create a

tenancy by the entirety must be evident in some fashion. No such intent is evidenced with respect

to the Studebaker Avanti. The mere fact that the Debtor and his wife both use the Studebaker or that

joint property was used to purchase the automobile does not supply the requisite intent since such

use is also consistent with mere joint ownership. Accordingly, the Trustee's objection to the

Debtor's claimed exemption in the Studebaker Avanti will be sustained.

F. 2009 Tax Refund

The last of the Trustee's objections concerns the couple's 2009 federal tax refund in the

amount of $33,862.00. The Debtor and his wife filed a joint tax return, and the refund check was

14

payable to "Carey W & Sabrina D McKain." The Debtor maintains that he and his wife hold the check as tenants by the entirety such that it is exempt in its entirety. The Trustee, on the other hand, argues that the tax refund should be allocated according to each spouse's respective withholdings. He notes that Mrs. McKain's income is from Social Security disability benefits and that there were no tax withholdings from her benefits. Because all of the tax withholdings were from the Debtor's earnings, the Trustee maintains that all of the refund belongs solely to the Debtor and therefore the bankruptcy estate.

The Debtor's assertion that he and his wife hold the tax refund as tenants by the entirety must be rejected. There is simply no support for this position under Virginia law. The check does not include tenancy by the entirety language; it does not refer to the McKains as husband and wife; and there is no survivorship language, which required even by the *Sampath* decision cited by the Debtor. *In re Sampath*, 314 B.R. at 98.

As to the Trustee's argument, there do not appear to be any reported Virginia state cases addressing the ownership of a joint tax refund outside the domestic relations context. The Trustee correctly notes that courts across the country have taken three different approaches to the tax refund ownership issue. The majority approach and the one urged by the Trustee is to allocate the refund proportionally to each spouse's tax withholding.[9] This approach was followed by the two most recent federal court decisions in Virginia. *See In re Lyall*, 191 B.R. 78 (E.D. Va. 1996); *In re Alexander*, No. 99-11874-SSM (Bankr. E.D. Va. Aug. 4, 1999). Another approach is to split the refund equally, regardless of each spouse's individual financial contribution,[10] a view followed by the district court in *Bass v. Hall*, 79 B.R. 653 (W.D. Va. 1987); *see also Johnston v. Rosenthal*, No.

_____

[9] *See In re Carlson*, 394 B.R. 491 (B.A.P. 8th Cir. 2008); *In re Kleinfeldt*, 287 B.R. 291 (B.A.P. 10th Cir. 2002); *In re Gartman*, 372 B.R. 790 (Bankr. D.S.C. 2007); *In re Edwards,* 363 B.R. 55 (Bankr. D. Conn. 2007); *In re Lock*, 329 B.R. 856 (Bankr. S.D. Ill. 2005); *In re Smith*, 310 B.R. 320 (Bankr. N.D. Ohio 2004); *In re WDH Howell, LLC,* 294 B.R. 613 (Bankr. D.N.J. 2003) (withholdings and income); *In re Ballou*, 12 B.R. 611 (Bankr. D. Kansas 1981).

[10] *See In re Glenn*, 430 B.R. 56 (Bankr. N.D.N.Y. 2010); *In re Garbett*, 410 B.R. 280 (Bankr. E.D. Tenn. 2008); *In re Trickett,* 391 B.R. 657 (Bankr. D. Mass. 2008); *In re Marciano*, 372 B.R. 211 (Bankr. S.D.N.Y. 2007); *In re Innis*, 331 B.R. 784 (Bankr. C.D. Ill. 2005); *In re Barrow*, 306 B.R. 28 (Bankr. W.D.N.Y. 2004); *In re Hejmowski*, 296 B.R. 645 (Bankr. W.D.N.Y. 2003); *Loevy v. Aldrich (In re Aldrich)*, 250 B.R. 907 (Bankr. W.D. Tenn. 2000).

93-39, 1993 WL 946197, *2 (Va. Cir. Ct. 1993).  The third approach is to allocate the refunds in proportion to the respective incomes of the couple,[11] a path followed in two earlier Virginia federal court decisions.  *See In the Matter of Hilliou*, No. BK-75-1248-R, 1976 WL 1031 (E.D. Va. 1976); *In re Kestner*, 9 B.R. 334 (Bankr. E. D. Va. 1981).  The Trustee calculates that even if this court utilizes the income allocation approach rather than the withholding approach, at least 94% of the tax refund would be allocable to the Debtor and consequently the bankruptcy estate.

After careful consideration, this court is persuaded by the *Bass* court's determination that Virginia law presumes a husband and wife filing a joint return own the refund equally. In reaching this conclusion, the district court first noted the presumption imposed by Virginia statute that joint bank accounts held by a husband and wife are presumed to belong to them equally absent clear and convincing evidence of a different intent. *Bass v. Hall*, 79 B.R. at 656 (citing Va. Code Ann. § 6.1-125.3, now cited as § 6.2-606(A)); *see also Johnston v. Rosenthal*, 1993 WL 946197, *2 (relying on Va. Code Ann. 6.1-125.3(A)'s presumption in holding that one-half of the tax refund belonged to each spouse).  The *Bass* court next observed that Virginia common law presumes that tenants in common have equal ownership in the absence of proof to the contrary, and that because this presumption applies to negotiable instruments it should logically apply to joint tax refunds between spouses.  *Bass v. Hall*, 79 B.R. at 656 (citing *Swan v. Swan's Ex'r*, 117 S.E. 858, 865 (Va. 1923) (securities); *Smith v. Alderson*, 83 S.E. 373, 374 (Va. 1974) (land); *Brantley v. Karas* II., 260 S.E.2d 189, 192 (Va.1979) (promissory note)).  Next, the *Bass* court noted that had the couple filed for divorce instead of bankruptcy, their proportional contribution to the income on which the return was based would only be one factor weighed by the court in distributing the refund and that another consideration would be "valuable but economically uncompensated services for the family" frequently performed by a spouse.  *Id*. at 657.  Lastly, the *Bass* court was persuaded by the fact that because the married couple's liability would have been joint had taxes been due under the return, their right to the refund should likewise be joint.  *Id.*

The district court in *Lyall* rejected the *Bass* approach based on the conclusion that filing a joint tax return does not alter property rights between husband and wife, *In re Lyall*, 191 B.R. at 85

---

[11] *See Judson v. Levine (In re Levine)*, 50 B.R. 587 (Bankr. S.D. Fla. 1985); *Butz v. Wheeler (In re Wheeler)*, 17 B.R. 85 (Bankr. S.D. Ohio 1981).

(citing *In re Wetteroff*, 453 F.2d 544, 547 (8th Cir. 1972)), and reasoned that, consequently, the portion of the married couple's joint tax refund which the debtor would have received had he filed individually should be included in his bankruptcy estate.  The *Lyall* court held that the most equitable and efficient method of setting this amount was in proportion to the couple's respective tax withholdings.  *Id*. at 85-86.  The bankruptcy court in *Alexander* followed *Lyall* because it was most recent ruling in the district.

Respectfully, it does not appear that the district court in *Lyall* made any attempt to determine Virginia law on the issue, instead relying on the Eighth Circuit's decision in *Wetteroff*, and the fact that the withholding allocation approach has been adopted by the majority of courts across the country deciding the issue.  Nonetheless, the critical inquiry for this court is what would be the property interest held by the debtor and his wife under Virginia law, *see Butner v. United States*, 440 U.S. 48, 54, 99 S. Ct. 914 (1979) (absent controlling federal law, property rights in bankruptcy are determined by state law), the analysis applied by the court in *Bass*.

As previously noted, one of the factors considered by the court in *Bass* was how the income tax return would have been treated had the couple filed for divorce rather than bankruptcy. Although this court realizes, as has been observed by one court, that it is state property law rather than domestic relations law that determines an individual's ownership interests, *see In re Lock*, 329 B.R. 856, 859 (Bank. S.D. Ill. 2005), nonetheless domestic relations law is one indication of legislative intent.  Under Virginia law, the tax refund as well as the income from which it was derived would be considered marital property, presumed to be jointly owned absent clear indicia to the contrary. *See* Va Code Ann. § 20-107.3(A)(2).  Consistent with this statute, the Virginia Court of Appeals held in *King v. King*, 578 S.E2d 806 (Va. App. 2003), a divorce action, that the refund from a jointly-filed tax return was marital property, except the portion that the spouses could trace to their separate earnings and property, which under the parties' prenuptial agreement constituted separate rather than marital property.  In reaching this conclusion, the court observed that "'Married, filing joint' is a special tax status that 'reflects the view of the Congress that the family should be considered as both a social and economic unit.'" *Id*. at 211 (quoting *Angelo v. Angelo*, 428 N.Y.S.2d 14, 16 (N.Y. App. Div. 1980)).  The court reasoned that along with the pecuniary advantage provided by a joint filing, the parties must accept the burdens, noting that upon the filing of a joint

17

return the liability of each spouse is joint and several. *Id.*

The Virginia domestic relations law and the analysis of the Virginia Court of Appeals in the *King* decision is consistent with Va. Code Ann. § 6.2-606(A)'s language regarding the ownership of joint bank accounts held by a married couple. All appear to consider jointly held property to be held equally by the married couple, unless contrary evidence or the financial background of the marriage indicates otherwise.

Application of this principle would appear to be especially pertinent to the determination of ownership of a joint tax refund. As cogently explained by one court:

> The reality of the Internal Revenue Code is that the total tax is not necessarily linked to income, while the overpayment is not necessarily linked exclusively to income or withholdings. For many taxpayers, a significant portion of the refund is not attributable not to these factors, but to any of a number of credits, such as the child tax credit or credits for education or for child and dependent care expenses. In many ways, the tax consequences of a joint filing exhibit no proportionality to respective levels of withholding and income. Joint tax filers may claim an exemption for each spouse, thereby effectively allowing them to use that exemption to offset income of the spouse with higher earnings. Similarly, the losses or deductions of one spouse may favorably impact their joint taxable income. For many married couples, a joint filing permits use of a more favorable tax table. The results are most dramatically illustrated when one spouse earns the entire family income. In that instance, because a spouse without income has joined in signing the tax return, the family may pay significantly less tax, as compared to the tax that would have accrued to a married person filing separately but with identical income and withholdings. It is simply inaccurate to say that the greater refund is attributable only to the income and withholdings of the employed spouse.

*In re Barrow*, 306 B.R. at 30-31.

With respect to the rebuttable nature of the presumption that a joint refund is owned equally, courts from other jurisdictions have noted that this outcome is overcome by evidence suggesting "whether by their present conduct or history of financial management, the taxpayers have demonstrated a basis for separate ownership." *Id.*; *see also In re Garbett*, 410 B.R. 280, 286 (Bankr. E.D. Tenn. 2009) (objecting party has burden to prove that spouses did not intend equal ownership of marital property); *In re Marciano*, 372 B.R. 211, 216 (Bankr. S.D.N.Y. 2007) (looking at couple's actual practice and pattern of financial management); *Loevy v. Aldrich (In re Aldrich)*, 250 B.R. 907, 912 (Bankr. W.D. Tenn. 2000) (analysis shall be made on a case-by-case basis); *cf. In re Innis*, 331

B.R. 784, 789 (Bankr. C.D. Ill. 2005) (rejecting consideration of the family's historical finances, and holding that refund from a jointly-filed return should always be equally divided, subject only to a different ownership allocation from a prenuptial agreement or domestic court order); *In re Glenn,* 430 B.R. 56, 62 (Bankr. N.D.N.Y. 2010); *In re Trickett*, 391 B.R. 657, 663 (Bankr. D. Mass. 2008) (following *Innis*). Factors to consider include whether bills were paid out of joint accounts, whether spouses were jointly responsible for paying bills, whether they had any personal accounts, and how the tax refund has traditionally been used.  *In re Hejmowski*, 296 B.R. 645, 650 (Bankr. W.D.N.Y. 2003).

Here, there is no evidence suggesting a basis for separate ownership of the tax refund.  From the evidence presented, the Debtor and his wife shared all assets and financial responsibilities, starting before they were married.  Both of their names are listed on every title of ownership, often followed by the words "joint tenants."  They alternated who was responsible for paying the family bills, but always from the couple's joint checking account.  The couple made purchases for their joint use and benefit.  Each had unfettered access to their investment accounts.  There is no evidence suggesting they had anything but joint finances.  Therefore, the presumption that the Debtor and his wife owned the tax refund equally has not been overcome. In summary, the Trustee's objection to the Debtor's claimed exemption as a tenant by the entirety will be sustained.  Because the Debtor is a joint owner of one-half of the tax refund, only that half belongs to the estate.

IV.

Based on the foregoing, an order will be entered sustaining all of the Trustee's objections except with respect to the Debtor's claimed exemption in the Scott and Stringfellow stock account. Additionally, the order will provide that only one-half of the 2009 federal tax refund belongs to the estate.

# # #